## McKEE et al. v. GRATON & KNIGHT CO.

### No. 4099.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1937.

Basel H. Brune, of Chicago, Ill. (A. Stacy Gifford, of Greensboro, N. C., and Joshua R. H. Potts and Eugene Vincent Clarke, both of Chicago, Ill., on the brief), for appellants.

Burton W. Cary, of Boston, Mass. (Melvin R. Jenney and Fish, Hildreth, Cary & Jenney, all of Boston, Mass., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

This is an appeal in a patent infringement suit in which Kullman patent No. 1,904,316, covering an improvement in pickers for fly shuttle looms, was held valid and infringed. In looms in which pickers are employed, the "filling" or weft thread is carried by a bullet nosed shuttle with a sharp point which is thrown from one side of the loom to the other in the weaving operation. This shuttle travels at a speed of approximately 200 feet per second and is propelled by picker sticks on opposite sides of the loom. The pickers with which the shuttle comes in contact are mounted on the ends of these picker sticks, and for years prior to Kullman's invention were made of leather, in which loom fixers would ordinarily make a small hole as a target or guide for the shuttle. The substance of the invention covered by the patent consists in providing a leather picker with a hole in its face of such size and design as to receive the force of the blow of the flying shuttle against the sides of the hole and thus avoid the damage which results from permitting the full force of the blow to be delivered by the shuttle's sharp end.

The drawing below illustrates the invention and shows the end of a shuttle in contact with a picker designed in accordance with the patent. The picker 20 is shown mounted on the picker stick 11. The shuttle end 12 is shown in contact with the hole in the face of the picker. The hole is so designed that its sides will be tangent to the parabolic shuttle end and will contact it inside the mouth of the hole at the points indicated by the figures 34:

The patent has one claim as follows:

"A picker for use with a shuttle in a loom, said picker being formed of a plurality of strips of leather placed side by side and an elongated piece of leather wound about said strips and firmly secured thereto, said picker having an accurately formed conical recess in its shuttle engaging face of predetermined size, and completely surrounded by the solid material of the picker, and having its side walls at such an angle as to be tangent to the shuttle point at a portion substantially spaced from the extreme end of said shuttle point, and said extreme end being free from the sides of said conical recess at the deepest part of said recess when the shuttle point is fully seated in said recess."

The evidence shows that pickers made in accordance with the patent have a much longer period of usefulness than other pickers and effect a considerable saving of time and labor on the part of loom fixers. It was at first difficult to secure their adoption by the trade because of the belief that the removal of so much leather from the face of the picker in the making of the hole would shorten the life of the picker; but after plaintiff had demonstrated that this was not true and that its effect was directly to the contrary, they entered at once into general use and enjoyed a high degree of commercial success.

The picker which defendants began manufacturing after the success of plaintiff's picker had been achieved cannot be distinguished from that of plaintiff. It accomplishes the same result, in the same way, and by the same means. The angle of the hole provided in the face of the picker is the same as used by plaintiff, and it operates in conjunction with the shuttle just as the picker of plaintiff does. It is argued that the end of the shuttle comes in contact with the bottom of the hole of defendants' pickers; but from a careful examination of the evidence and the exhibits we are unable to see any difference between them. It is doubtless true that after pickers made in accordance with the patent have been used for some length of time, they conform to the shape of the shuttle end so that it penetrates to the bottom of the hole; but, even then, the sides of the hole receive their share of the force of the impact, and, even if this were not true, the protection of the patent on the initial configuration is not to be denied because use may result in a development of the hole

into a shape which the patent would not protect.

█ The evidence of prior use relied on is not sufficient to invalidate the patent. No one prior to plaintiff had conceived of a hole in the face of a picker so designed as to receive the blow of the shuttle in the sides of the hole and protect the picker by distributing the force of the blow over a wider area than would be involved were the blow delivered by the point of the shuttle. The holes that had theretofore been made in the face of the picker were merely for the purpose of guiding the shuttle and preventing its striking at different points on the face of the picker and were not so designed that their sides would be tangent to the sides of the shuttle and would absorb the force of the blow that it delivered. If any hole so drilled in the past corresponded to the hole of the patent, it appears that this was a mere matter of chance or accident; for it is clear that prior to the patent in suit neither the purpose nor the result of the hole of the patent was in contemplation of any one. It is well settled that prior accidental production of the same thing, where character and function are not recognized, does not anticipate. See Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 58–60, 43 S.Ct. 322, 67 L.Ed. 523; Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658; Tilghman v. Proctor, 102 U.S. 707, 711, 26 L. Ed. 279; H. K. Regar & Sons v. Scott & Williams (C.C.A.2d) 63 F.(2d) 229, 231; Morgan Construction Co. v. Wellman, etc., Co. (C.C.A.6th) 18 F.(2d) 395, 399; Pyrene Mfg. Co. v. Boyce (C.C.A.3d) 292 F. 480, 481, 485, 486; Fulton Co. v. Bishop & Babcock Co. (C.C.A.6th) 284 F. 774, 777.

We are even less impressed by the patents relied upon in support of the plea of anticipation. All of these were before the patent office, and neither singly nor in combination do they suggest what the patentee here has done. The French Rabatel patent covers an aluminum picker in which a recess, filled with a packing of yielding material, is to receive the blow of the shuttle. Newton Smith Patent No. 1,301,298, as stated by the court below, "is a sheet metal construction having a cushion or pad of leather in a rectangular sheet metal pocket, but it does not disclose the nature or characteristics of the recess which is the dominant characteristic of plaintiff's patent." The English patent to Spencer covers a metal holder with an india rubber striking part tapered to fit the nose of the shuttle. Archibald No. 406,416 covers a metallic receptacle for the end of the shuttle. Gilligan No. 1,532,808 has a bunter for receiving the end of the shuttle made of "a hard unyielding material such as hard composition fiber, bakelite, or the like." Bullard No. 1,332,102 shows a socket for engaging the shuttle point having no relation to the hole provided by Kullman. None of these patents solved satisfactorily the problem to which they were addressed, but they demonstrate the existence of the problem and the fact that effort was being made to solve it. None of them suggests that it could be solved by providing a hole in the face of an ordinary leather picker of such configuration that the blow of the shuttle would be delivered by the shoulders of the shuttle end against the sides of the hole.

█ The simplicity of the invention should not blind us to its merits. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527. The fact that the trade was at first doubtful of its utility is pretty clear proof that it was not something that was obvious or that it involved mere mechanical skill. National Battery Co. v. Richardson Co. (C. C.A.6th) 63 F.(2d) 289, 292. This strengthens the presumption of validity which attaches to the issuance of the patent, and to this should be added also the presumption which arises from defendants' imitation of the patented article after its success had been assured. The language of Judge Hough in Kurtz v. Belle Hat Lining Co. (C.C.A.2d) 280 F. 277, 281, is applicable here: "The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think." See, also, Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp. (C.C.A.4th) 40 F.(2d) 910, 914.

█ The patent is a narrow one and is to be strictly limited to the device claimed, i. e., to a leather picker in which the hole in the engaging face is of such character that its sides are tangent to the parabolic nose of the shuttle and thus prevent the full blow of the impact of the shuttle from being delivered by the sharp point at the shuttle's end. As so limited, however, we think that it is valid and that it is infringed by the device of defendants.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.